IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Kendall Bank | Civil File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Cincinnati Insurance Company, | |
| Defendant. | |

Plaintiff Kendall Bank ("Kendall Bank"), for its Complaint against Cincinnati Insurance Company ("Cincinnati"), states and alleges as follows:

I. NATURE OF THE ACTION

1. This is an action to enforce Kendall Bank's rights as a mortgagee and lender loss payee under a policy of property insurance issued by Cincinnati to Kendall Bank's borrower, Spanish Gardens Food Manufacturing, Inc. ("Spanish Gardens"). Cincinnati received written instruction from Spanish Gardens' insurance broker to list Kendall Bank as the mortgagee and lender loss payee on the policy. After a fire devastated the property, Cincinnati failed to honor Kendall Bank's rights.

2. Although Cincinnati had received instruction to add Kendall Bank to the policy as mortgagee and lender loss payee, after loss, Cincinnati issued payments in excess of $2,000,000 *solely* to Spanish Gardens.

3. Spanish Gardens did not use the proceeds to restore the mortgaged property to pre-loss conditions. On information and belief, Spanish Gardens used the vast majority of the

insurance proceeds for operating expenses and used only a fraction of the proceeds towards repair or restoration of the damaged property.

4. Upon discovery of the fire and of the insurance payments made in violation of Kendall Bank's rights as sole loss payee, Kendall Bank immediately notified Cincinnati. Although Cincinnati agreed to issue future payments to Kendall Bank also, the damage was already done. Cincinnati later declined to issue insurance payments in respect of Spanish Gardens' claimed losses.

5. Kansas law is clear that a lender named as mortgagee and lender loss payee is entitled to receive policy proceeds exclusively, and may enforce its loss payee rights directly against the insurer. Further, an insurer who fails to honor the lender's rights as mortgagee and loss payee may be compelled to pay the loss payee's damages even after issuance of payments to the insured.

6. To evade its irrefutable legal obligations under Kansas law, Cincinnati apparently now claims it may disregard instructions to name a lender as loss payee on an insurance policy, and yet accept subsequent premium payments while failing to notify its insured of its alleged refusal to add the lender to the policy, in contravention of applicable law and insurance industry custom and practice.

7. Kendall Bank seeks damages for Cincinnati's breach of its contractual obligations and duties of good faith and fair dealing. Kendall Bank seeks to enforce its direct contractual rights as mortgagee and lender loss payee under the policy issued to its borrower. Kendall Bank seeks a declaration of its rights as mortgagee and lender loss payee.

8. In the alternative, Kendall Bank seeks reformation of the Policy to reflect Kendall Bank as the mortgagee and lender loss payee on the declarations pages, as Cincinnati and Kendall Bank intended.

## II. PARTIES

9. Kendall Bank is a bank incorporated under the laws of Kansas, with its principal place of business at 11225 College Blvd., Suite 150, Overland Park, KS 66210. 28 U.S.C. § 1348.

10. Defendant Cincinnati is incorporated under the laws of Ohio with its principal place of business at 6200 S Gilmore Road, Fairfield, Ohio 45014.

11. Cincinnati is authorized to do business and issue insurance policies in the state of Kansas.

## III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. Cincinnati is subject to personal jurisdiction in this Court because, among other things, it transacts business in the state of Kansas and insures businesses and properties in the state of Kansas, including the property that is the subject of this Complaint for which Kendall Bank is lender.

14. Venue in this district is proper under 28 U.S.C. § 1391 because Kendall Bank's principal place of business is in this district and a substantial portion of the events giving rise to the claim occurred in this district.

## IV. GENERAL ALLEGATIONS

**A.  CINCINNATI AGREES TO INSURE THE MORTGAGED PROPERTY**

15. Cincinnati sold insurance policy number ECP0686132 to Spanish Gardens for the period of May 19, 2023 to May 19, 2024 ("the Policy"), a true and correct copy of which is attached to this Complaint as **Exhibit A** and incorporated by reference.

16. Cincinnati drafted the Policy.

17. The Policy states that Cincinnati will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss. Policy § A.

18. The Policy states that Cincinnati will pay for covered "loss" to "buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear." Policy § E (2) (a) – (b).

19. The Policy also provides that the mortgage holder will have the right to receive loss payment even if the mortgage holder has started foreclosure or similar action. Policy § E (2) (c).

20. The Policy also provides that the mortgage holder will have the right to receive payment even if Cincinnati denies the claim because of the policyholders' acts or because the policyholder failed to comply with the terms of the Policy, if the mortgage holder satisfies certain conditions. Policy § E (2) (d).

21. The mortgage and loan documents require Spanish Gardens to have Kendall Bank listed on the property policy as mortgagee for the property under a standard mortgage clause and as lender's loss payee for business personal property.

22. The mortgage and loan documents provide that, upon loss, Kendall Bank may, at its election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the property, or the restoration and repair of the property.

23. On June 30, 2023, Nate Govea of The Baldwin Group emailed Jeffrey Winter at Cincinnati, explaining that Kendall Bank needed to be added on the Policy as mortgagee and business personal property (BPP) lenders' loss payee. The Baldwin Group provided the following information about the mortgagee and lender's loss payee to be added to the Policy:

> Kendall Bank
> And or its assigns as their interests may appear
> 11225 College Blvd., Suite 150
> Overland Park, KS 66210

A true and accurate copy of the June 30, 2023 email is attached as **Exhibit B**.

24. Cincinnati did not object to adding Kendall Bank as mortgagee and lender loss payee in response to the June 30, 2023 email from The Baldwin Group.

25. AHT Insurance, a Baldwin Risk Partner, subsequently issued to Kendall Bank a Certificate of Insurance (COI) dated June 30, 2023, reflecting Kendall Bank's status as mortgagee on the listed property and lender's loss payee for business personal property covered under the policy. A true and accurate copy of the COI is attached to this Complaint as **Exhibit C**.

26. On information and belief, Cincinnati accepted premium payments from Spanish Gardens on the Policy after receiving instruction to add Kendall Bank as the mortgagee and lender loss payee on the Policy.

27. Cincinnati never notified Kendall Bank, Spanish Gardens or Baldwin Group that Cincinnati would not be adding Kendall Bank as mortgagee and lenders loss payee on the Policy as instructed.

28. On information and belief, Cincinnati routinely adds mortgagees and lenders as loss payees on insurance policies upon instruction to do so by a policyholder and/or the policyholder's broker, as here.

B.   **FIRE AT SPANISH GARDENS MANUFACTURING FACILITY**

29. On February 18, 2024, a fire damaged property insured under the Policy.

30. The February 18, 2024 fire is a Covered Cause of Loss under the Policy.

31. Spanish Gardens filed a claim with Cincinnati, which Cincinnati assigned claim number 4257450 ("the Claim"). Spanish Gardens sought insurance proceeds for property and business income-related damages of more than $3,000,000.

32. On the date of loss, Spanish Gardens owed approximately $1,211,637.75 on the notes pertaining to its building and business personal property insured under the Policy.

    C.    **CINCINNATI ISSUES PAYMENT EXCLUSIVELY TO BORROWER**

33. By check dated March 29, 2024, Cincinnati issued payment solely to "Spanish Gardens Food Manufacturing Co" in the amount of $1,465,669.25.

34. The March 29, 2024 check notes reflect it was issued "FOR: Actual Cash Value Less $1000 Deductible."

35. By check dated June 20, 2024, Cincinnati issued payment solely to "Spanish Gardens Food Manufacturing Co" in the amount of $676,000.00.

36. The June 20, 2024 check notes reflect it was issued for "Balance of Business Personal Property limits."

37. The March 29, 2024 and the June 20, 2024 checks were signed by Thomas Van Pelt of Cincinnati.

38. Spanish Gardens did not cash the checks from Cincinnati at Kendall Bank.

39. On information and belief, Spanish Gardens used most of the insurance proceeds for operating expenses. Spanish Gardens used only a fraction of the insurance proceeds received for repair or restoration of the mortgaged property.

    D.    **RECOGNIZING ITS ERROR, CINCINNATI AGREES TO HONOR KENDALL BANK'S RIGHTS AS LOSS PAYEE FOR FUTURE PAYMENTS**

40. On October 16, 2024, Kendall Bank representative, Becky Foster, emailed Thomas Van Pelt, the Cincinnati adjuster for the Claim, attaching the COI evidencing Kendall Bank as mortgagee and lender's loss payee, asking why Kendall Bank was not listed on claim checks, and requesting any future payments be made directly to Kendall Bank.

41. On October 22, 2024, Mr. Van Pelt stated that Cincinnati needed "a written statements from Spanish Gardens authorizing any future payments for business or personal property to include Kendall Bank." Mr. Van Pelt claimed the policy "does not list Kendall Bank as a [sic] mortgage or named insured."

42. On October 24, 2024, The Baldwin Group, on behalf of Spanish Gardens, confirmed that The Baldwin Group asked Cincinnati to add Kendall Bank as mortgagee and loss payee in June 2023 and clarified that this request had been sent to Cincinnati's underwriter and would be in the underwriting file. This email was forwarded to Mr. Van Pelt at Cincinnati.

43. On information and belief, Cincinnati then conducted an investigation of its underwriting files. On October 25, 2024, Mr. Van Pelt wrote back to Kendall Bank. On behalf of Cincinnati, Mr. Van Pelt agreed that, "based on what Haley [of The Baldwin Group] has provided, any future payments will include Kendall Bank." Cincinnati reiterated that any payments for property damage or business personal property would include Kendall Bank.

### E. CINCINNATI REFUSES TO PAY ADDITIONAL LOSSES SUBMITTED BY BORROWER

44. On information and belief, Spanish Gardens suffered business income losses totaling over $1,000,000.

45. Cincinnati has failed and/or refused to pay the full amount of Spanish Gardens' business income losses. On information and belief, Cincinnati has agreed to pay less than $100,000.00 of Spanish Gardens' business income losses arising from the fire.

46. On or about December 5, 2025, Cincinnati first claimed it did not agree to list Kendall Bank as loss payee on the insured mortgaged property, despite receiving instruction to do so, accepting premium payments afterwards, and, after loss, agreeing to issue future payments to Kendall Bank after an investigation of Kendall Bank's rights.

47. On information and belief, Cincinnati created this excuse that it did not "agree" to list Kendall Bank, despite receiving instruction to do so, only after discovering Cincinnati had failed to issue payment directly to Kendall Bank as mortgagee and lender loss payee and, under Kansas law, is liable to pay Kendall Bank's damages regardless of prior payments to the borrower. *See* Kan. Stat. Ann. 40-2404 (9) (a).

## CAUSES OF ACTION

### Count One – Breach of Contract

48. Kendall Bank restates and incorporates by reference the above-numbered paragraphs.

49. The Policy is a valid and binding contract.

50. The property damaged by fire is covered property under the Policy.

51. Spanish Gardens has satisfied all conditions to coverage under the Policy.

52. The Policy requires Cincinnati to make payment for covered "loss" to buildings or structures to the mortgage holder show in the Declarations in their order of precedence, as interests may appear. Policy § E (2) (a) – (b).

53. The Policy also requires Cincinnati to make payment to "the mortgage holder" even if the mortgage holder has started foreclosure or similar action on the building or structure and even if Cincinnati denies the claim because of the insured's acts or failure to comply with the terms of the Policy. Policy § E (2) (c)-(d). The Policy does not define the mortgage holder or refer to the Declarations in Policy § E (2) (c) – (d).

54. On June 30, 2023, on behalf of Spanish Gardens, The Baldwin Group instructed Cincinnati to add Kendall Bank as mortgagee and lender loss payee on the Policy.

55. Cincinnati never notified Spanish Gardens or Kendall Bank that Cincinnati did not agree to list Kendall Bank on the Policy as mortgagee and lender loss payee.

56. On information and belief, Cincinnati subsequently accepted premium payments from Spanish Gardens in exchange for insuring the mortgaged property, aware that Kendall Bank is the lender for the Property and was requiring that it be added to the Policy as mortgagee and lender loss payee.

57. Kendall Bank had a contractual right to receive payment of all insurance proceeds, up to the value of its loans, for the building and business personal property as lender loss payee and mortgagee.

58. Cincinnati breached its contractual obligations to Kendall Bank by failing to issue payments for property damage and business personal property damage to Kendall Bank as mortgage holder and lender loss payee.

59. Cincinnati's refusal to honor Kendall Bank's rights as mortgage holder and loss payee on a mortgaged property that Cincinnati knowingly accepted premiums in exchange for insuring is unreasonable and without just cause or excuse.

60. Cincinnati has applied an unreasonable interpretation of the Policy's terms in rejecting Kendall Bank's rights as mortgage holder and lender loss payee.

61. As a direct and proximate cause of Cincinnati's contractual breaches, Kendall Bank has sustained direct and consequential loss in excess of $1,200,000, including unreimbursed losses and attorney's fees and other costs and expenses, in an amount to be proven at trial.

### Count Two - Declaratory Judgment

62. Kendall Bank restates and incorporates by reference the above numbered paragraphs.

63. Kendall Bank is mortgagee of the property insured under the Policy.

64. On June 30, 2023, on behalf of Spanish Gardens, The Baldwin Group instructed Cincinnati to add Kendall Bank as mortgagee and lender loss payee on the Policy.

65. Cincinnati never notified Spanish Gardens or Kendall Bank that Cincinnati did not agree to list Kendall Bank on the Policy as mortgagee and lender loss payee.

66. Cincinnati subsequently accepted premium from Spanish Gardens in exchange for insuring the mortgaged property, aware that Kendall Bank is the lender for the Property and was requiring that it be added to the Policy as mortgagee and lender loss payee.

67. An actual controversy of a justiciable nature exists between Cincinnati and Kendall Bank concerning whether Kendall Bank is mortgagee and lender loss payee under the Policy. Issuance of declaratory relief by this Court will terminate the existing controversy between the parties.

68. Kendall Bank seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 stating that, at the time of loss, Kendall Bank was mortgagee and lender loss payee under the Policy.

69. Kendall Bank seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 stating that Kendall Bank is entitled to the full amount of Spanish Garden's property and business personal property losses up to the full value of the loan(s).

### (In the Alternative) Count III – Reformation

70. In the alternative to Kendall Bank's claims in Count I and Count II, Kendall Bank seeks to have the Policy reformed to reflect the true intent of the parties that Kendall Bank be listed as mortgagee and lender loss payee.

71. On June 30, 2023, on behalf of Spanish Gardens, The Baldwin Group instructed Cincinnati to add Kendall Bank as mortgagee and lender loss payee on the Policy.

72. Cincinnati never notified Spanish Gardens or Kendall Bank that Cincinnati did not agree to list Kendall Bank on the Policy as mortgagee and lender loss payee.

73. Cincinnati subsequently accepted premium from Spanish Gardens in exchange for insuring the mortgaged property, aware that Kendall Bank is the lender for the Property and was requiring that it be added to the Policy as mortgagee and lender loss payee.

74. Cincinnati and Kendall Bank intended that Kendall Bank be listed in the Policy as mortgagee for the property and lender loss payee for business personal property.

75. If Cincinnati failed to issue an endorsement modifying the Policy to add Kendall Bank as mortgagee and lender loss payee per Spanish Gardens' instruction, the lack of such endorsement resulted from mutual mistake.

76. If Cincinnati failed to issue an endorsement modifying the Policy to add Kendall Bank as mortgagee and lender loss payee per Spanish Gardens' instruction, the Policy did not reflect the mutual intent of the parties thereto.

77. In the alternative to Counts I and II, Kendall Bank seeks an Order from this Court and judgment, declaring, decreeing and adjudging that

   a. Kendall Bank is the mortgagee and lender loss payee under the Policy.

   b. Cincinnati owed payment of policy proceeds for property damage and business personal property damage to Kendall Bank as mortgagee and lender loss payee.

      c.    Granting Kendall Bank such other and further relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Kendall Bank demands a jury trial on all issues so triable.

**WHEREFORE,** Kendall Bank requests judgment in its favor and against Cincinnati Insurance Company, awarding Kendall Bank the following:

    A.    Damages for all direct and consequential losses sustained as a direct consequence of Cincinnati's failure to honor the terms of the Policy, in an amount to be proven at trial;

    B.    Any interest on the above-described amounts, including pre-judgment and post-judgment interest at the highest rates allowed by law;

    C.    A declaratory judgment that Kendall Bank is mortgagee and lender loss payee under the Policy;

    D.    A declaratory judgment that Cincinnati is obligated to pay Kendall Bank the full amount of Spanish Garden's property and business personal property losses up to the full value of the loan(s).

    E.    In the alternative, a reformation of the Policy to reflect the actual intent of the parties to the insurance policy and Kendall Bank that Kendall Bank be listed as mortgagee and lender loss payee;

    F.    All attorney fees, costs, and expenses in bringing this action, as allowed by law.

    G.    Such other and further relief as the Court deems necessary, just, or proper.

| | |
|---|---|
| Dated: February 6, 2026 | */s/ Christina D Arnone*<br>Christina D. Arnone – KS #24522<br>**STINSON LLP**<br>1201 Walnut, Suite 2900<br>Kansas City, MO 64106<br>Telephone: (816) 691-2469<br>christina.arnone@stinson.com<br><br>**ATTORNEY FOR PLAINTIFF** |